UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

GABINO C. B.,[1]

Petitioner,

v.

WARDEN OF THE CALIFORNIA CITY
CORRECTIONAL CENTER, et al.,

Respondents.

No. 2:26-cv-00655-TLN-CKD

[A# 205-467-044]

**ORDER**

This matter is before the Court on *pro se* Petitioner Gabino C. B.'s ("Petitioner") Petition for Writ of Habeas Corpus ("the Petition").[2]  (ECF No. 1.)  Respondents filed a Motion to Dismiss certain Respondents (ECF No. 6) and an Answer to the Petition (ECF No. 7).  For the reasons set forth below, Respondents' Motion to Dismiss is DENIED and the Petition is GRANTED.  Respondents are ordered to IMMEDIATELY RELEASE Petitioner.

///

---

[1]   The Court omits Petitioner's full name to protect sensitive personal information.  *See* Memorandum re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management of the Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf.

[2]   The Court liberally construes *pro se* filings.  *Estelle v. Gamble*, 429 U.S. 97, 106 (1976).

1

**I.     FACTUAL AND PROCEDURAL BACKGROUND**[3]

This matter arises out of a challenge to civil immigration detention.  Petitioner has lived in the United States for over 15 years. (ECF No. 1 at 4.)  In that time, Petitioner has worked consistently and established strong community ties.  (*Id.*)  Petitioner has a family for whom he is the primary financial provider, including a medically-vulnerable twelve-year-old son who suffers from genetic malformations and cancer.  (*Id.* at 4, 15.)  Petitioner has been a supportive caregiver for his son.  (*Id.* at 15.)

Petitioner is not a citizen of the United States, but he has applied for asylum here.  (*Id.* at 5.)  His application is currently pending.  (*Id.*)  In 2013, more than 12 years ago, Petitioner was convicted of driving under the influence.[4]  (*Id.*; ECF No. 7 at 2.)  As a result of the charge, Respondents instituted removal proceedings against Petitioner and took him into immigration custody.  (ECF No. 7 at 2.)  On January 30, 2013, Respondents then released Petitioner on an Order of Release on Recognizance with Alternatives to Detention monitoring.  (*Id.*)

Nearly 13 years later, on December 2, 2025, U.S. Immigration and Customs Enforcement ("ICE") detained Petitioner.  (ECF No. 1 at 5.)  Although there are few details in the record about the circumstances of his arrest, Petitioner states he was not committing a crime at the time of arrest.  (*Id.*)  Removal proceedings against Petitioner remain pending and there was no final order of removal at the time of detention.  (*Id.* at 13–14.)

Since his detention, Petitioner has not been afforded an individualized custody determination.  (*Id.*)  Petitioner has now been detained for nearly four months without a hearing.  (*See id.*)

Petitioner challenges the lawfulness of his civil detention without a bond hearing.  (*Id.*)  The Court ordered Respondents to show cause why the Petition should not be granted.  (ECF No. 5.)  In response, Respondents filed a Motion to Dismiss and answer to the Petition.  (ECF Nos. 6, 7.)  The Court now considers Respondents' motion and the merits of the Petition.

---

[3]     Except where noted, the facts are not disputed.

[4]     Petitioner claims he has not been convicted of any other crimes, but Respondents claim that Petitioner was convicted for driving on a suspended license.  (ECF Nos. 1 at 2; 7 at 2.)

**II.     MOTION TO DISMISS RESPONDENTS**

Respondents move to dismiss all Respondents other than warden of the detention facility, arguing that the immediate custodian is the exclusive proper respondent in a habeas petition.[5] (ECF No. 6 (citing *Doe v. Garland*, 109 F.4th 1188, 1195 (9th Cir. 2024).)

"[L]ongstanding practice confirms that in habeas challenges to present physical confinement — 'core challenges' — the default rule is that the proper respondent is the warden of the facility where the prisoner is being held . . . ." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004). The Ninth Circuit has "affirm[ed] the application of the immediate custodian and district of confinement rules to core habeas petitions filed pursuant to 28 U.S.C. § 2241, including those filed by immigrant detainees." *Doe v. Garland*, 109 F.4th 1188, 1199 (9th Cir. 2024).

Although *Doe* held that "*Padilla* set forth a clear rule requiring core habeas petitioners challenging their present physical confinement to name their immediate custodian, the warden of the facility where they are detained, as the respondent to their petition," *Doe* did not preclude naming more than one respondent so long as the immediate custodian is named. *Id*. at 1197. "When a petition presents both a core challenge, such as seeking release from present physical confinement, and a non-core habeas challenge, such as enjoining re-detention absent written notice and a hearing prior to re-detention," courts in this District have denied the Government's motion to dismiss the remaining respondents "because the immediate custodian has only immediate physical custody of petitioner but no outside immigration enforcement responsibilities, while the remaining respondents . . . would make the decision to re-detain" the petitioner. *Destarde Osoria v. Warden Cal. City Detention Ctr., et al.,* No. 1:26-CV-01528-KES-EPG-HC, 2026 WL 747297, at *2 (E.D. Cal. Mar. 17, 2026) (citing *Sofor Njamitoh v. Cruz*, No. 1:26-cv-01705-KES-SAB, 2026 WL 701002, at *2 (E.D. Cal. Mar. 11, 2026) (cleaned up); *see also Doe v. Garland*, 109 F.4th at 1192 n.2 (citing *Padilla*, 542 U.S. at 438) ("When a habeas petitioner 'challenges a form of 'custody' other than present physical confinement,' the respondent can be

---

[5]     Specifically, Respondents seek to dismiss the U.S. Immigration and Customs Enforcement ("ICE") San Diego Field Office Director, the Acting Director of ICE, the Secretary of Homeland Security, and the U.S. Attorney General.  (*See* ECF No. 1 at 3–4.)

'the entity or person who exercises legal control with respect to the challenged 'custody.'"); *H. K. v. Noem*, No. 1:26-CV-01158-JLT-SKO, 2026 WL 657729, at *4 (E.D. Cal. Mar. 9, 2026), *report and recommendation adopted*, No. 1:26-CV-01158-JLT-SKO, 2026 WL 792791 (E.D. Cal. Mar. 20, 2026) ("The nature of custody in immigration detention is fundamentally different from the nature of military detention in *Rumsfeld*, or criminal incarceration.  Naming the warden of the detention facility alone could lead to problematic results.").

Given that Petitioner named his immediate custodian as a Respondent and this Court determines below that a future injunction is warranted, the Court declines to dismiss the remaining named Respondents.  Accordingly, the Court denies Respondents' motion to dismiss.

### III.    PETITION FOR WRIT OF HABEAS CORPUS

#### A.  Standard

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art I, § 9, cl. 2).  "The essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973).  A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law.  28 U.S.C. § 2241(c)(3).  Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001).  Accordingly, a district court's habeas jurisdiction includes challenges to immigration detention.  *See Zadvydas v. Davis*, 533 U.S. 678, 687 (2001).

#### B.  Analysis

Petitioner claims his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.  (ECF No. 1 at 6–7.)  The Court addresses each claim in turn.

##### i.  *Immigration and Nationality Act*

Petitioner claims his detention without a bond hearing violates the INA.  (ECF No. 1 at 6.)

4

In opposition, Respondents contend Petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2), which does not provide for a bond hearing.  (ECF No. 7 at 1, 5.)

Under the INA, § 1226(a) "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal." *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.  *Id.*  It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.  Conversely, § 1225(b)(2) mandates detention during removal proceedings for "applicants for admission" who are "seeking admission" and does not provide for a bond hearing.

Until the U.S. Department of Homeland Security changed its policy in July 2025, the Government consistently applied § 1226(a), not § 1225(b)(2), to noncitizens residing in the United States who were detained by immigration authorities and subject to removal.

The vast majority of courts across this Circuit, including this one, have repeatedly rejected Respondents' argument on the applicability of § 1225(b)(2) to persons like Petitioner who reside in the United States.  *See Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *3 (E.D. Cal. Dec. 11, 2025) (explaining this Court's reasons for taking this position and collecting cases).  "These courts examined the text, structure, agency application, and legislative history of 1225(b)(2) and concluded that it applies only to noncitizens 'seeking admission,' a category that does not include noncitizens like [Petitioner], living in the interior of the country." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *8 (N.D. Cal. Sept. 12, 2025) (collecting cases).

In comparison, "[t]he government's proposed reading of the statute (1) disregards the plain meaning of section 1225(b)(2)(A); (2) disregards the relationship between sections 1225 and 1226; (3) would render a recent amendment to section 1226(c) superfluous; and (4) is inconsistent with decades of prior statutory interpretation and practice." *Lepe v. Andrews*, No.

1:25-CV-01163-KES-SKO (HC), 2025 WL 2716910, at *4 (E.D. Cal. Sept. 23, 2025) (collecting cases).

For these reasons and consistent with this Court's numerous prior rulings, the Court finds Petitioner is not an applicant for admission subject to mandatory detention under § 1225(b)(2). Rather, Petitioner's detention is governed by § 1226(a) and he is entitled to the process required by that provision including, at minimum, a bond hearing.  Over nearly four months of detention, Respondents did not provide any hearing.  Therefore, Respondents violated § 1226(a) of the INA.

### ii.   Fifth Amendment Due Process Clause

Petitioner also claims that his detention violates due process.[6]  (ECF No. 1 at 7.) Respondents do not contend with Petitioner's as applied challenge.  (ECF No. 7 at 8–9.)

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law.  U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017).  The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status.  *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention.  *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution.  *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### a)      Liberty Interest

As for the first step, the Court finds Petitioner has a protectable liberty interest. "[F]reedom from imprisonment is at the 'core of the liberty protected by the Due Process

---

[6]      Respondents contend the INA's mandatory detention provisions under 8 U.S.C. § 1225(b) are facially constitutional because the United States Supreme Court has upheld a similar provision of the INA (8 U.S.C. § 1226(c)) as facially constitutional.  (ECF No. 7 at 8 (citing *Demore v. Kim*, 538 U.S. 510, 526 (2003)).)  However, as discussed above, this Court has already found § 1225(b)(2) does not apply to Petitioner.  Even assuming § 1225(b)(2) did apply to Petitioner, Respondents do not analyze Petitioner's challenge as applied to his detention. (*See* ECF No. 7.)

6

Clause.'" *Hernandez*, 872 F.3d at 993 (citing *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992).

"Even where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause." *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025). Liberty interest may be strengthened over time. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

Petitioner has a clear liberty interest here. He has resided in the United States for over 15 years, built a life here with ties to the community, and established a family for whom he is the primary provider. Even if he is removable, or his liberty is revocable, his liberty is still protected by due process. *See Hernandez*, 872 F.3d at 993; *Zadvydas*, 533 U.S. at 693. Having found a protected liberty interest, the Court next turns to the procedural safeguards that were owed to Petitioner.

b)   <i>Procedures Required</i>

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976).

First, as explained above, Petitioner has a substantial private interest in his own liberty that is unquestionably affected by Respondents' actions detaining him. The amount of time Petitioner spent at liberty underscores the gravity of its loss. *See Doe v. Becerra*, 787 F. Supp. 3d 1083, 1094 (E.D. Cal. 2025) ("The lengthy duration of his conditional release as well as the meaningful connections Petitioner seems to have made with his community during that time create a powerful interest for Petitioner in his continued liberty.") Additionally, as a result of his detention, Petitioner cannot care for his medically-vulnerable child. Thus, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez*

*v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention.  Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions."  *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).  Here, Petitioner is not subject to a final order of removal. (ECF No. 1 at 14.)  And Respondents do not contend Petitioner is a danger or a flight risk.  (*See* ECF No. 7.)  The Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest.  Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal.  *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025).  The cost and time of procedural safeguards are minimal here.  Notice and custody determination hearings are routine processes for Respondents.  Indeed, they are the very processes required under 8 U.S.C. § 1226(a).  Any delay in detention (if justified) for the time to provide notice and a hearing would have been minimal. It would also be less of a fiscal and administrative burden for Respondents to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

At minimum, due process required Respondents to provide Petitioner with notice and a custody determination hearing.  Yet, in nearly four months of detention, Respondents did not

8

provide any hearing to Petitioner, either pre- or post- deprivation.  Therefore, Respondents violated the Fifth Amendment and Petitioner's procedural due process rights.

### IV.   CONCLUSION

Petitioner is detained in violation of the Constitution and federal law and he must be released.  Accordingly, IT IS HEREBY ORDERED:

1. Respondents' Motion to Dismiss (ECF No. 6) is DENIED.

2. Petitioner's Petititon for Writ of Habeas Corpus (ECF No. 1) is GRANTED.[7]

3. Respondents must IMMEDIATELY RELEASE Petitioner GABINO C.B. (A# 205-467-044).  Respondents shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.  At the time of release, Respondents must return all of Petitioner's documents and possessions.

4. **Respondents must file a notice of compliance with this Order by April 2, 2026.**

5. To avoid further irreparable harm and protect the public interest, Respondents are ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-deprivation hearing before a neutral fact-finder where: (a) Respondents show material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondents demonstrate by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk.  At any such hearing, Petitioner shall be allowed to have counsel present.[8]

---

[7]   Petitioner also sought an award of attorney's fees and costs under the Equal Access to Justice Act. (ECF No. 1 at 8.)  The Court will consider any timely filed request for fees and costs on a properly noticed and supported motion.

[8]   This injunction does not prohibit re-detention in the event of a final order of removal; it merely requires due process in re-detention.  Respondents request the Court modify its typical injunction to permit re-detention in the event Petitioner is ordered removed in the future. (ECF No. 7 at 10.)  Respondents ask this Court to address a hypothetical scenario that is not ripe and they do not articulate how this injunction would frustrate, prohibit, or conflict with execution of a final removal order.  Therefore, the Court declines to adopt Respondents' proposed language at this time.  Should Respondents obtain a final order of removal and find that they cannot comply

6. The Clerk of the Court shall enter judgment in favor of Petitioner and close this case.

IT IS SO ORDERED.

Date: March 31, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE

_____

with both the injunction and their duty to execute an order of removal, Respondents may seek post-judgment relief from this Court and explain the conflict.

10